UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL BROWN, on behalf of himself and
all others similarly situated,

                              Plaintiff,

       -against-

                                                    8:20-cv-1311
                                                    (BKS/DJS)
GOOGLE, LLC, and GOOGLE
PAYMENT CORP.,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DEFENDANTS' MEMORANDUM  OF LAW IN SUPPORT OF MOTION TO DISMISS**

BAKER & MCKENZIE LLP

Catherine Y. Stillman
Christina N. Cerutti
452 Fifth Avenue
New York, NY 10018
212 626 4100

*Attorneys for Defendants*
Google LLC and Google Payment Corp.

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ...................................................................................... 1

II. ALLEGED FACTS ........................................................................................................ 3

III. LEGAL STANDARD ..................................................................................................... 5

IV. ARGUMENT ................................................................................................................. 6

    A.   Section 230 Protects Google from State Law Liability for the Third-Party
       Content It Hosts on the Google Play Platform ........................................................ 6

        i.   Google Play is an "interactive computer service" that provides a platform
           for video games created by third-party "information content providers." ......... 6

        ii.  Plaintiff's attempts to plead around Section 230 fail, and cannot be
           remedied. ................................................................................................... 9

    B.   Plaintiff's Complaint Fails to State a Claim Under New York's Loss Recovery
       Statute Because the Law Permits Recovery Only from the "Winner" of a Game
       or Bet, and Google Did Not Win Anything from Plaintiff ..................................... 11

        1.   Transaction #1: Plaintiff's free download of the Third-Party Apps .............. 12

        2.   Transaction #2: Plaintiff's purchase of virtual "coins" from the Third-Party
           Apps on set terms using Google's payment processing service ................... 13

        3.   Transaction #3: Plaintiff's delivery of virtual coins to the Third-Party Apps
           to play casino-style games ....................................................................... 14

V. CONCLUSION ............................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arrieta v. Morrissey*,
1 Abb. Pr. 439, 1866 N.Y. Misc. LEXIS 49 (N.Y. Ct. Comm. Pleas 1866) ................... 12, 15

*Ascentive, LLC v. Op. Corp.*,
842 F. Supp. 2d 450 (E.D.N.Y. 2011) ................................................................ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 5, 10

*Atl. Recording Corp. v. Project Playlist, Inc.*,
603 F. Supp. 2d 690 (S.D.N.Y. 2009) .......................................................... 8

*Beamel Amusement Corp. v. Police Dep't of Suffolk County*,
283 N.Y.S.2d 760 (N.Y. Sup. Ct. 1967) ....................................................... 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................... 5

*Black v. Google, Inc.*,
457 Fed. App'x 622 (9th Cir. 2011) ............................................................ 7

*Brodie v. Green Spot Foods, LLC*,
20 Civ. 1178 (ER), 2020 U.S. Dist. LEXIS 223299 (S.D.N.Y. Nov. 30, 2020) .............. 10, 11

*Brown v. Mastercard Int'l, Inc. (In re Mastercard Int'l, Inc. Internet Gambling Litig.)*,
Nos. 00-MD-1321, 00-MD-1322, 00-0657, 2004 U.S. Dist. LEXIS 3056 (E.D. La. Feb. 18, 2004) ................................................................... 3, 13, 14

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) .................................................................. 8

*Cohen v. Facebook, Inc.*,
252 F. Supp. 3d 140 (E.D.N.Y. 2017) ......................................................... 9

*Diez v. Google, Inc.*,
No. 20-50940, 2020 U.S. App. LEXIS 39695 (5th Cir. Dec. 17, 2020) ................................ 7

*Fair Hous. Council v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ................................................................ 9

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019) ................................................................. 6, 9

*Free Kick Master LLC v. Apple Inc.*,
  140 F. Supp. 3d 975 (N.D. Cal. 2015) ...............................................................7

*FTC v. LeadClick Media, LLC*,
  838 F.3d 158 (2d Cir. 2016) ...................................................................... 6, 7

*Gallop v. Cheney*,
  642 F.3d 364 (2d Cir. 2011) ...............................................................................5

*Gavra v. Google, Inc.*,
  No. 5:12-CV-06547-PSG, 2013 U.S. Dist. LEXIS 100127 (N.D. Cal. July 17,
  2013)....................................................................................................................7

*Goddard v. Google, Inc.*,
  640 F. Supp. 2d 1193 (N.D. Cal. 2009) .......................................................7, 11

*Gonzalez v. Google, Inc.*,
  335 F. Supp. 3d 1156 (N.D. Cal. 2018) ..............................................................7

*Hale v. Rao*,
  No. 9:08-CV-0612, 2009 U.S. Dist. LEXIS 102295 (N.D.N.Y. Sep. 29, 2009).....................5

*Heinitz v. Seterus, Inc.*,
  No. 1:18-CV-1076, 2019 U.S. Dist. LEXIS 169628 (N.D.N.Y. Sep. 30, 2019) ...................10

*Herrick v. Grindr LLC*,
  765 F. App'x 586 (2d Cir. 2019) .......................................................................1

*Hinton v. Amazon.com.DEDC, LLC*,
  72 F. Supp. 3d 685 (S.D. Miss. 2014) ..............................................................11

*Jimenez v. Junius Real Estate*,
  No. 16-CV-7483 (VEC) (JLC), 2017 U.S. Dist. LEXIS 87504 (S.D.N.Y. June
  7, 2017).................................................................................................................5

*Jurin v. Google, Inc.*,
  695 F. Supp. 2d 1117 (E.D. Cal. Feb. 26, 2010) .................................................7

*Matter of Kee Yee Shum v. Daines*,
  891 N.Y.S.2d 549 (3rd Dept. 2009) ................................................................12

*Manchanda v. Google*,
  No. 16-CV-3350 (JPO), 2016 U.S. Dist. LEXIS 158458 (S.D.N.Y. Nov. 16,
  2016)..............................................................................................................7, 11

*Mosha v. Yandex Inc.*,
  No. 18-cv-5444 (ER), 2019 U.S. Dist. LEXIS 169526 (S.D.N.Y. Oct. 30,
  2019)....................................................................................................................7

*Novak v. Overture Servs.*,
    309 F. Supp. 2d 446 (E.D.N.Y. 2004) ...................................................................7

*Ricci v. Teamsters Union Local 456*,
    781 F.3d 25 (2d Cir. 2015) .................................................................................6

*Takhvar v. Page*,
    No. 2:17-cv-00673-JRG-RSP,  2018 U.S. Dist. LEXIS 37290 (E.D. Tex. Feb.
    25, 2018) .............................................................................................................7

*TechnoMarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014) ...............................................................................5

*Tejada v. Mance*,
    No. 9:07-CV-0830, 2008 U.S. Dist. LEXIS 85566 (N.D.N.Y. Sep. 12, 2008) .......................5

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ..............................................................................8

**Statutes**

Ala. Code § 8-1-150(a) ..............................................................................................13

Communications Decency Act, 47 U.S.C. § 230 *et seq.*......................................*passim*

N.Y. Gen. Oblig. Law § 5-421 ................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 3, 5, 15

## I.      PRELIMINARY STATEMENT

Plaintiff Michael Brown has invoked New York's "loss recovery statute," N.Y. Gen. Oblig. Law § 5-421, based on his experience playing various casino-style videogame applications (or "apps"). Yet he has sued two internet platform defendants—Google LLC and Google Payment Corp. (collectively, "Google")—that did not create or develop these videogames, never won anything from Plaintiff in any sort of chance-based game or bet (as the statute requires), and are protected from liability under section 230 of the federal Communications Decency Act, 47 U.S.C. § 230 *et seq.* ("Section 230"). The Court should therefore dismiss under Rule 12(b)(6) Plaintiff's single cause of action, without leave to amend.

Plaintiff takes issue with the *content* of three videogame applications—"Goldfish Casino," "Cashman," and "Jackpot Party" (collectively, "Third-Party Apps")—which he describes as casino-style gambling games that allegedly constitute illegal gambling under New York law. Plaintiff does not allege that Google had any role in creating or developing any aspect of the Third-Party Apps, nor could he; these games, like all of the others mentioned in the Complaint, are developed, updated, and managed entirely by third parties. Instead, Plaintiff is clear that Google's involvement is limited to two activities: (i) providing an online platform—called the Google Play Store—from which Plaintiff could simply *download* the Third-Party Apps onto his mobile phone or tablet; and (ii) providing a content neutral service for processing transactions between Plaintiff and the Third-Party Apps. These are the precise circumstances under which Section 230 shields Google from state law liability: "The majority of federal circuits have interpreted [§ 230(c)] to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Herrick v. Grindr LLC*, 765 F. App'x 586, 589 (2d Cir. 2019) (quoting *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th

1

Cir. 2006)) (modification in original).  Because Plaintiff has not, and cannot, allege that Google created or developed the content at issue, but instead simply made that third-party content available for download through its online platform, the Court must dismiss the Complaint on Section 230 grounds.

In addition, Plaintiff has no loss recovery claim against Google in the first place.  New York's loss recovery law is clear that the cause of action lies *only* against the "winner" of at least twenty-five dollars delivered by a plaintiff and then lost by playing a game or making a bet.  *See* N.Y. Gen. Oblig. Law § 5-421.  Plaintiff simply cannot place Google within these statutory confines.  Plaintiff's Complaint identifies three separate and discrete transactions: 1) downloading the Third-Party Apps for free from the Google Play Store; 2) purchasing a specific amount of virtual "coins" for a set amount of money using Google's payment processing services; and 3) wagering those virtual coins with the owners of the Third-Party Apps for the chance to win more virtual coins.  None of these three activities could ever satisfy the statutory requirements for a loss recovery action against Google under New York law.

In the *first* transaction, for which Plaintiff does not appear to seek recovery, he downloaded the Third-Party Apps from the Google Play Store for free, and therefore parted with no money or property at all.

In the *second* transaction, Plaintiff alleges that Google performed only a payment processing service for a transaction between Plaintiff and the Third-Party Apps to purchase virtual "coins."  This is a simple currency exchange, made on certain terms, and so involves no chance-based game or bet, as the statute requires.  *See* N.Y. Gen. Oblig. Law § 5-421.  Plaintiff received exactly as many virtual coins as were promised, and suffered no loss, either.  His claim to recover these "in-app purchases" from Google (Compl. ¶ 35) therefore fails at the outset.  Importantly, any

2

interactions between Plaintiff and Google ceased entirely after this currency exchange was complete. *See generally Brown v. Mastercard Int'l, Inc. (In re Mastercard Int'l, Inc. Internet Gambling Litig.)*, Nos. 00-MD-1321, 00-MD-1322, 00-0657, 2004 U.S. Dist. LEXIS 3056 (E.D. La. Feb. 18, 2004) (dismissing with prejudice loss recovery claim under Alabama law against a credit card issuer whom the plaintiff claimed had processed purchases of "credits" that were *subsequently* used to engage in online gambling with third parties).

As for the *third* transaction—which took place exclusively between Plaintiff and various third-party mobile app developers—Plaintiff appears to be attempting to recover from Google the *value* of virtual "coins" that he delivered to the creators of the Third-Party Apps "for a chance to win [more] free coins that would enable him to enjoy the games for a longer period of time." (*See* Compl. ¶ 12.) This third-party transaction cannot support a loss recovery claim against Google, because Plaintiff never *delivered* these virtual coins to Google, and Google therefore did not and could never have *won* them. Nor was Google involved in any part of Plaintiff's alleged use of the virtual coins to make a bet or wager with the third-party developer within the third-party app on his mobile device—and Plaintiff does not allege otherwise.

For these reasons, as described more fully below, the Court should dismiss Plaintiff's Complaint in its entirety, and with prejudice.

## II.   ALLEGED FACTS[1]

Plaintiff alleges that he downloaded at least one of the Third-Party Apps onto his mobile device prior to April 3, 2016. (Compl. ¶ 12.) Google did not develop or create these Third-Party

---

[1] Google acknowledges that, on a motion to dismiss pursuant to FRCP 12(b)(6), the Court must accept as true the allegations in the Complaint. Thus, this Statement of Alleged Facts is, without prejudice, based on the allegations in the Complaint. Defined terms not otherwise defined herein have the same definition as in the Complaint.

Apps; instead, it manages a platform called the Google Play Store through which these apps are "ma[de] available" for download. (*Id.* ¶ 11.)

The Third-Party Apps are free to download. (*Id.* ¶ 8.) Plaintiff alleges generally that they offer a "casino-style" virtual gameplay experience that mimics many features of physical slot machines and table games like blackjack or roulette. (*Id.* ¶ 11.) The Third-Party Apps provided Plaintiff an initial allotment of virtual currency—known as virtual "coins"—to use within the apps. (*Id.*)

When Plaintiff used his allotment of free coins, the Third-Party Apps—not Google— offered him the opportunity to purchase more virtual "coins through the app[.]" (*Id.* ¶ 12.) Google processes such transactions through a neutral payment tool available to all app developers who post content to Google Play, and takes a fee for such services. (*See id.* ¶¶ 8-9.) In the three months prior to October 22, 2020, Plaintiff alleges he paid $1,014.87 and in exchange received the equivalent in virtual coins. (*Id.* ¶ 12.)

Plaintiff then alleges he engaged in a subsequent transaction with the Third-Party Apps *after* completing his virtual coin purchase processed by Google. Specifically, he claims he bet virtual coins in the Third-Party Apps hoping to win more virtual coins that would "enable him to enjoy the games for a longer period of time." (*Id.*) Under these circumstances, the only things Plaintiff could conceivably "lose" by playing these alleged gambling devices were virtual "coins." And the only entities who could likewise win these virtual "coins" were the Third-Party App developers based on the content of these Third-Party Apps. Because Google's involvement with Plaintiff ended after processing the virtual currency purchase, Google played no part in Plaintiff's subsequent virtual casino-style gameplay, which took place exclusively in the Third-Party Apps. Plaintiff alleges no facts to the contrary.

Plaintiff has now asserted a single cause of action under New York's loss recovery statute, N.Y. Gen. Oblig. Law § 5-421, to recover "all sums paid through in-app purchases" for the Third-Party Apps.  (*See id.* ¶ 35.)

## III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  A plaintiff may fail to meet his pleading standard by (i) neglecting to allege sufficient facts to satisfy the elements of the causes of action asserted, or (ii) asserting an inherently deficient theory of liability.  *Tejada v. Mance*, No. 9:07-CV-0830 (NAM/GHL), 2008 U.S. Dist. LEXIS 85566, at *6 (N.D.N.Y. Sep. 12, 2008); *Hale v. Rao*, No. 9:08-CV-0612 (DNH/GHL), 2009 U.S. Dist. LEXIS 102295, at *3 (N.D.N.Y. Sep. 29, 2009).

A plaintiff must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Mere conclusory allegations are not sufficient, and a plaintiff must allege "enough facts 'to raise a right to relief above the speculative level,' and 'state a claim to relief that is plausible on its face." *Jimenez v. Junius Real Estate*, No. 16-CV-7483 (VEC) (JLC), 2017 U.S. Dist. LEXIS 87504, at *20 (S.D.N.Y. June 7, 2017).

Where, as here, Plaintiffs' claims are inherently defective, the Court should grant a motion to dismiss with prejudice.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (holding that the district court did not err in

dismissing the claims with prejudice [i]n the absence of any indication that [the plaintiff] could—or would—provide additional allegations that might lead to a different result").

## IV.    ARGUMENT

### A.    Section 230 Protects Google from State Law Liability for the Third-Party Content It Hosts on the Google Play Platform

Plaintiff's loss recovery claim against Google arising from the content of third-party video games available on its Google Play platform is barred by Section 230 of the Communications Decency Act ("CDA"). Section 230(c)(1) affords immunity from liability where three elements are met: "(1) [the defendant] is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat [the defendant] as the publisher or speaker of that information." *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (alteration in original) (internal quotation marks and citation omitted). "In light of Congress's objectives, the Circuits are in general agreement that the text of Section 230(c)(1) should be construed broadly in favor of immunity." *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019) (collecting cases).

Here, the Complaint's allegations confirm that Google satisfies the requirements for Section 230 immunity, and so the Court may make this determination at the pleadings stage. *See id.* at 63 n.15 ("[T]he application of Section 230(c)(1) is appropriate at the pleading stage when, as here, the statute's barrier to suit is evident from the face of plaintiffs' proposed complaint.") (internal quotations and citations omitted).

#### i.    Google Play is an "interactive computer service" that provides a platform for video games created by third-party "information content providers."

There can be no serious dispute that Google meets the "expansive[]" definition of "interactive computer service." *See Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015). "Courts typically have held that internet service providers, website exchange systems,

6

online message boards, and search engines fall within this definition." *LeadClick*, 838 F.3d at 174 (citing cases); *see also Mosha v. Yandex Inc.*, No. 18-cv-5444 (ER), 2019 U.S. Dist. LEXIS 169526, at *21 (S.D.N.Y. Oct. 30, 2019) (noting that online "aggregators of third-party content" are covered by the CDA). As a result, Google has been found to satisfy the statutory definition, seemingly without exception. *See, e.g.*, *Manchanda v. Google*, No. 16-CV-3350 (JPO), 2016 U.S. Dist. LEXIS 158458, at *4 (S.D.N.Y. Nov. 16, 2016); *Novak v. Overture Servs.*, 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004) (applying Section 230 immunity to Google as an interactive computer service); *see also Diez v. Google, Inc.*, No. 20-50940, 2020 U.S. App. LEXIS 39695, at *4-5 (5th Cir. Dec. 17, 2020) (unpublished per curiam) ("Google is merely an interactive computer service provider as opposed to an information content provider."); *Takhvar v. Page*, No. 2:17-cv-00673-JRG-RSP, 2018 U.S. Dist. LEXIS 37290, at *4 (E.D. Tex. Feb. 25, 2018) (holding that plaintiff's claims were "barred by [Section 230] which provides *internet service providers, such as Google*, with broad immunity from content-based claims originating from third parties) (emphasis added); *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 983 (N.D. Cal. 2015); *Gonzalez v. Google, Inc.*, 335 F. Supp. 3d 1156, 1179 (N.D. Cal. 2018); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009); *Gavra v. Google, Inc.*, No. 5:12-CV-06547-PSG, 2013 U.S. Dist. LEXIS 100127 at *9 (N.D. Cal. July 17, 2013); *Black v. Google, Inc.*, 457 Fed. App'x 622, 623 (9th Cir. 2011); *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1123 (E.D. Cal. Feb. 26, 2010).

The same result follows here. Plaintiff concedes that Google's Play Store is a platform where "millions of software developers make applications for the Android O[perating] S[ystem] . . . available." (Compl. ¶ 7.) Plaintiff likewise alleges a class of New York residents who downloaded one or more of 200 games listed in the Complaint that are alleged to contain certain content. (*Id.* ¶ 23.) The Play Store, like Google's other platforms, therefore satisfies the definition

of an "information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet . . ." *See* 47 U.S.C. § 230(f)(2) (defining "interactive computer service").

While the third-party developers who created the content of the 200 video games referenced in the Complaint are classic "information *content* provider[s]" under the CDA, Google itself does *not* meet that definition. In contrast to the expansive reading of "interactive computer service," the term "'information content provider' [is] construed narrowly" under the CDA. *See Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 701 (S.D.N.Y. 2009) (citing *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003)). Doing so furthers the CDA's goal of promoting the continued development of interactive computer services by providing broad protections to platforms that do not play a role in creating the third-party content on their websites. *See Carafano*, 339 F.3d at 650-51; *accord* 47 U.S.C. §§ 230(b)(1) (defining Section 230 policy), (c)(1) (defining protections to providers of an interactive computer service).

Information content providers are therefore limited to "any person or entity that is responsible, in whole or in part, for the *creation or development of information* provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3) (emphasis added). Plaintiff nowhere alleges that Google has had any involvement in developing the *content* of the Third-Party Apps. Instead, Google simply "makes available" these videogames for download in its Google Play Store; Plaintiff himself characterizes this conduct as "distribution," not content creation. (*See* Compl. ¶ 7.) Plaintiff's own characterization essentially confirms that Google is not an "information content provider" of any of the videogames at issue. *See, e.g., Zeran v. Am.*

8

*Online, Inc.*, 129 F.3d 327, 332 (4th Cir. 1997) (describing "distributor liability" as "merely a subset, or a species, of publisher liability, and . . . therefore also foreclosed by § 230.").

Accordingly, Section 230 protects Google from liability for Plaintiff's single state law cause of action. *See, e.g.*, *Force*, 934 F.3d at 64 n.18 ("[I]t is well established that Section 230(c)(1) applies not only to defamation claims, where publication is an explicit element, but also to claims where the duty that the plaintiff alleges the defendant violated derives from the defendant's *status or conduct* as a publisher or speaker.") (internal citations and quotations omitted) (emphasis in original); *see generally* 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with [Section 230].")

> ii.     *Plaintiff's attempts to plead around Section 230 fail, and cannot be remedied.*

The Complaint's allegations confirm that Google is an interactive computer service but not an information content provider, and that Plaintiff seeks to hold Google liable because of third-party content made available on the Google Play platform. Under these circumstances, Section 230 applies: "Section 230(c)(1) shields defendants who operate certain internet services from liability based on content created by a third party and published, displayed, or issued through the use of the defendant's services." *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 155 (E.D.N.Y. 2017), *aff'd sub nom. Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019). Even close cases—*unlike* this one—"must be resolved in favor of immunity, lest [courts] cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites, fighting off claims that they promoted or encouraged--or at least tacitly assented to--the illegality of third parties." *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008).

Plaintiff alleges no facts that would undermine these fundamental principles in any way. He notes that Google, like any other mature interactive computer service, maintains and enforces standards regarding content posted to the Google Play platform, including limiting access to certain apps based on age or geography. (*See* Compl. ¶ 15.) Exercising such discretion does not waive Section 230 protections, because it does not involve any content *creation*, but rather traditional "editorial functions" about how and whether to publish the content of third parties. *See, e.g.*, *Brodie v. Green Spot Foods, LLC*, 20 Civ. 1178 (ER), 2020 U.S. Dist. LEXIS 223299, at *18 (S.D.N.Y. Nov. 30, 2020) ("[T]he CDA bars liability for the exercise of a publisher's 'traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'") (quoting *LeadClick*, 838 F.3d at 174).

Plaintiff's generic allegations that Google "promote[s] and facilitat[es]" the challenged Third-Party Apps fare no better. (*See* Compl. ¶¶ 14, 16.) First, these are mere legal conclusions, unsupported by any facts, and so the Court may disregard them. *Heinitz v. Seterus, Inc.*, No. 1:18-CV-1076 (LEK/ATB), 2019 U.S. Dist. LEXIS 169628, at *5 (N.D.N.Y. Sep. 30, 2019) (The Court may disregard 'legal conclusions couched as factual allegations' that are 'devoid of further factual enhancement.'") (quoting *Iqbal*, 556 U.S. at 678). To the extent these conclusory allegations are intended to refer to Google's use of search algorithms and other standard internet platform tools for arranging how third-party content appears in the Google Play Store, they fail to state a claim or plead around Section 230. Tools such as "search engine optimization"—a concept which generally involves increasing the quantity of internet traffic to specific internet content—do not transform an interactive computer service into an information content provider. *See, e.g.*, *Ascentive, LLC v. Op. Corp.*, 842 F. Supp. 2d 450, 475 (E.D.N.Y. 2011) (granting motion to dismiss on Section 230 grounds despite allegations that website operator used search engine

optimization to make certain pages appear higher in search engine results lists). Because Plaintiff cannot allege that Google *alters* the Third-Party Apps in any way, he cannot avoid Section 230.

Finally, to the extent Plaintiff would suggest that Google waives all Section 230 protections by acting as payment processor for in-game virtual coin transactions and collecting a fee for such services (Compl. ¶¶ 3, 7, 8, 14), courts have considered and rejected this specific argument. Facilitating online transactions for a fee does not transform a platform provider into a content developer, or vitiate Section 230 defenses. *See, e.g.*, *Manchanda*, 2016 U.S. Dist. LEXIS 158458, at *2, *7 (finding claims against Google barred by Section 230 notwithstanding allegations that it profited from indexing websites that allegedly caused reputational damage); *Brodie*, 2020 U.S. Dist. LEXIS 223299, at *17-20 (applying Section 230 protections to Amazon "as a retailer"). "[T]he fact that a website elicits online content for profit is immaterial; the only relevant inquiry is whether the interactive service provider 'creates' or 'develops' that content." *Goddard*, 2008 U.S. Dist. LEXIS 101890, at *10 (citing *Blumenthal v. Drudge*, 992 F. Supp. 44, 52 (D.D.C. 1998)); *see also Hinton v. Amazon.com.DEDC, LLC*, 72 F. Supp. 3d 685, 686, 690 n.9 (S.D. Miss. 2014) (noting that "a website operator's . . . receipt of profits from online sales [does not] control[] the immunity determination under § 230" and dismissing with prejudice state law claims asserted against internet commerce retailer arising from products sold by third parties through its website).

Accordingly, the Court should grant the motion to dismiss without leave to amend.

**B.    Plaintiff's Complaint Fails to State a Claim Under New York's Loss Recovery Statute Because the Law Permits Recovery Only from the "Winner" of a Game or Bet, and Google Did Not Win Anything from Plaintiff**

Plaintiff asserts one claim under New York General Obligations Law § 5-421, which provides:

"Every person who shall, by playing at any game, or by betting on the sides or hands of such as do play, lose at any time or sitting, the sum or value of twenty-five dollars or

upwards, and shall pay or deliver the same or any part thereof, may, within three calendar months after such payment or delivery, sue for and recover the money or value of the things so lost and paid or delivered, from the winner thereof."

The plain language of the statute makes clear there are at least four necessary elements for a loss recovery claim under New York law: that Plaintiff (1) lost; (2) money or something of value in excess of twenty-five dollars; (3) by betting or playing a game of chance; and (4) seeks recovery from the winner to whom that money or valuable thing was delivered. *Matter of Kee Yee Shum v. Daines*, 891 N.Y.S.2d 549, 550 (3rd Dept. 2009) ("If the terms of a statute are clear and unambiguous, their plain meaning will be dispositive."). In addition, Plaintiff must allege that he lost at least twenty-five dollars at a single "sitting" and cannot aggregate alleged losses. *Arrieta v. Morrissey*, 1 Abb. Pr. (n.s.) 439, 447, 1866 N.Y. Misc. LEXIS 49 (N.Y. Ct. Comm. Pleas 1866).

Plaintiff identifies three separate and discrete transactions in an effort to satisfy the statutory requirements: 1) downloading the Third-Party Apps for free from the Google Play Store (*see* Compl. ¶ 8); 2) purchasing a specific amount of virtual "coins" for a set amount of money using Google's payment processing service (*id.* ¶ 11); and 3) wagering those virtual coins with the owners of the Third-Party Apps for the chance to win more virtual coins (*id.* ¶ 12). All three are inherently insufficient to state a loss recovery claim against Google.

### 1.      Transaction #1: Plaintiff's free download of the Third-Party Apps

Plaintiff accuses Google of selling "illegal gambling machine games . . . in its Google Play Store." (*Id.* ¶ 10.) But he also concedes that all such "games" at issue in this lawsuit—including the Third-Party Apps—are not "sold," but instead are free to download. (*Id.* ¶ 8.) Plaintiff cannot sustain a loss recovery claim on the basis of downloading a free app, because this activity involves none of the four required statutory elements: there was (1) no loss, (2) no payment of money or

anything else of valued at twenty-five dollars or more, (3) no chance-based game or bet, and (4) no delivery of any money or property to Google.  *See* N.Y. Gen. Oblig. Law § 5-421.

>              2.      *Transaction #2: Plaintiff's purchase of virtual "coins" from the Third-
>                      Party Apps on set terms using Google's payment processing service*

Plaintiff seeks recovery of "all sums paid through in-app purchases" (Compl. ¶ 35), which he explains is the money he paid to purchase virtual coins.  (*See id*. ¶ 12.)  This transaction does not satisfy the requirements of a loss recovery claim because it did not result in a loss, nor did it involve any chance-based game or wager, and so did not result in any "winner."  *See* N.Y. Gen. Oblig. Law § 5-421; *accord Beamel Amusement Corp. v. Police Dep't of Suffolk County*, 283 N.Y.S.2d 760, 761 (N.Y. Sup. Ct. 1967) (noting that "the material element" of a gambling transaction is "chance").  Plaintiff's virtual currency exchange was made on certain terms: he received a specific amount of virtual coins in exchange for a set amount of money.  (*See* Compl. ¶ 11.)  Without any uncertainty as to the outcome, this transaction was not a game or a bet, and so did not produce a winner or a loser.  Plaintiff instead received exactly as much virtual currency as was promised.  Then, upon receiving the virtual coins, Plaintiff ceased transacting with Google. All *subsequent* activity which Plaintiff alleges to be illegal gambling took place exclusively between him and the developers of the Third-Party Apps. He therefore has no legally cognizable claim against Google under the New York loss recovery statute.

At least one court has recognized this key temporal and substantive distinction in the course of rejecting a state loss recovery statute claim asserted against similarly-situated defendants. In *Brown v. Mastercard Int'l, Inc. (In re Mastercard Int'l, Inc. Internet Gambling Litig.)*, Nos. 00-MD-1321, 00-MD-1322, 00-0657, 2004 U.S. Dist. LEXIS 3056 (E.D. La. Feb. 18, 2004), the

district court dismissed a loss recovery claim under Alabama law[2] against a credit card issuer whom the plaintiff claimed had processed purchases of "credits" that were subsequently used to engage in online gambling.  *Id.* at *8.  The court, applying previous rulings in those multidistrict litigation proceedings (as affirmed by the Fifth Circuit), recognized that "the transactions at issue consist of two separate events: (1) plaintiff's transaction with the credit card company, which ended upon the receipt of credit and (2) plaintiff's subsequent online gambling."  *Id.* at *7-8.  Just as in this case, the exchange of money for virtual currency was fully completed before the plaintiff engaged in any "subsequent [alleged] online gambling" activity, and so no loss recovery claim could lie against the payment processor involved in that exchange.  *See id.* at *8 (noting that it was a "temporal impossibility for the [credit card] defendants to have completed their transaction with the plaintiff *before he gambled* and . . . then to be prosecuted for collecting the proceeds of a gambling device, which can only take place *after some form of gambling is completed*") (emphasis added).  The court therefore dismissed the plaintiff's loss recovery claim with prejudice.  As Plaintiff here specifically characterizes Google's role as providing "payment processing services" to the Third-Party Apps for purchase of nothing more than virtual "coins" (*see* Compl. ¶ 3), and as he acknowledges receiving these coins, (*see id.* ¶ 12), the reasoning in *Brown* supports dismissal of Plaintiff's loss recovery claim under New York law.

   3.    *Transaction #3: Plaintiff's delivery of virtual coins to the Third-Party Apps to play casino-style games*

      To the extent Plaintiff may argue that his actual loss recovery claim concerns his *subsequent* wager of virtual coins within the Third-Party Apps for the "chance to win free coins"

---

[2] Alabama's loss recovery statute contains very similar requirements to those in the New York statute at issue here.  Specifically, it permits recovery by "[a]ny person who has <u>paid any money</u> or delivered any thing of value <u>lost upon any game or wager</u> . . . ."  Ala. Code § 8-1-150(a).

(*see* Compl. ¶ 12), his cause of action against Google fails.  He never delivered these virtual coins to *Google*, as the statute requires, but instead to the developers of the Third-Party Apps.  *See* N.Y. Gen. Oblig. Law § 5-421.  He therefore did not lose any of this property <u>to Google</u>.  Likewise, Google never "won" (or ever had a chance to win) this virtual currency, either.  Plaintiff cannot allege otherwise, given his admission that Google does nothing more than provide "processing services" and a content neutral "payment interface" to the Third-Party Apps in exchange for a commission *concerning a separate, antecedent, non-chance-based transaction*. (*see* Compl. ¶¶ 3, 8.)  As a result, his loss recovery claim must be dismissed.

Finally, in terms of his supposed damages, Plaintiff alleges only the value of virtual coins he purchased over a three-month period.  (*See id.* ¶ 12.)  But the statutory language "at any time or sitting" has been interpreted to mean that a plaintiff must show he lost at least twenty-five dollars *in a single episode of gameplay*: "if at any sitting, the loss does not amount to twenty-five dollars, there could be no action maintained for the amount lost at that sitting."  *Arrieta v. Morrissey*, 1 Abb. Pr. (n.s.) 439, 447, 1866 N.Y. Misc. LEXIS 49 (N.Y. Ct. Common Pleas 1866).  Plaintiff has not made any allegation about alleged losses incurred in any particular "sitting" at a Third-Party App.  His claim is subject to dismissal for this additional reason.

Because Plaintiff has failed to allege facts stating a claim for relief against Google under New York's loss recovery statute, the Court must dismiss the claim without leave to amend.[3]

---

[3] Finally, the allegations in the Complaint about New York's various criminal gambling statutes do not change the Court's analysis on this motion.  The single claim in this case arises under Section 5-421 of the New York General Obligations Law only.  Moreover, although not directly at issue in this motion, Google expressly denies that any of its actions as alleged in the Complaint or otherwise constitutes unlawful gambling under New York law.

V.      **CONCLUSION**

For the reasons discussed above, the Complaint should be dismissed as against Google

LLC and Google Payment Corp., pursuant to Federal Rule of Civil Procedure 12(b)(6).


Dated: New York, New York
      February 1, 2021                      **BAKER & MCKENZIE LLP**
                                          452 Fifth Avenue
                                          New York, NY 10018
                                          (212) 626-4100


                               By: /s/ Catherine Y. Stillman
                                      Catherine Y. Stillman
                                      Christina N. Cerutti
                                      *Attorneys for Defendants*
                                      *Google LLC and Google Payment Corp.*